UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

NCJC, Inc. and Joseph Goche,

                    Plaintiff,

v.

Rick Lawrence, Randy Main and Main
Transport, LLC d/b/a NutraBoss,

                    Defendants.

No. _____

**COMPLAINT
JURY TRIAL DEMANDED**

        Plaintiffs Joseph Goche ("Goche") and NCJC, Inc. ("NCJC") for their Complaint

against Defendants Rick Lawrence ("Lawrence"), Randy Main and Main Transport, LLC

d/b/a NutraBoss state and allege as follows:

## INTRODUCTION

        1.        NCJC hired Lawrence to invent and build a better system for dispensing

nutrients and chemicals to a field of crops based on the insights that Goche, NCJC's

owner and CEO, developed from more than 35 years of farming experience.  Goche

provided a detailed description of the system NCJC wanted Lawrence to make.  NCJC

also provided equipment, materials, the use of fields and labor, and paid Lawrence for his

services to develop a working invention.  After the invention was complete, Goche and

Lawrence filed a patent application listing themselves as co-inventors of the new system.

        2.        Although NCJC owned the invention that Lawrence was hired to make,

Goche and Lawrence believed that the invention could be successfully commercialized.

They agreed that Lawrence would be responsible for forming and operating a business to

commercialize the invention and that he would pay a royalty for use of the invention once the business reached $50,000 in sales.

3.      Rather than comply with his agreement, Lawrence sought to cut Goche and NCJC out of the business altogether.  Lawrence built a business and started selling the invention that NCJC owned, but refused to pay the agreed upon royalty.  Additionally, Lawrence filed a continuation application that claimed priority to the pending patent application covering the invention that he made jointly with Goche, which NCJC owned. In doing so, Lawrence sought to take control of the invention for himself.

4.      NCJC and Goche bring this action to obtain a declaration of their rights to the inventions that Lawrence was paid to invent, to enforce the agreement with Lawrence to pay a royalty, and to prevent Lawrence from exploiting an invention that NCJC owns without providing compensation.

## **PARTIES**

5.      NCJC, Inc. is an Iowa corporation with its principal place of business located at 3702 185th Ave., Titonka, Iowa.

6.      Joseph Goche is an individual and a resident of Fairmont, Minnesota.

7.      Rick Lawrence is an individual and a resident of Blue Earth, MN. Lawrence does business under the name Fine Line Frame.

8.      Randy Main is an individual and a resident of Buffalo City, Iowa.

9.      Main Transport, LLC ("Main Transport") is an Iowa limited liability company with its home office located at 6483 Highway 9, Buffalo City, Iowa.  The registered agent for Main Transport is Randy Main.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1338(a).

11.     This action arises under the patent laws of the United States of America and/or this action necessarily depends on the resolution of a substantial question of federal patent law, in that the claims and relief sought involve a determination of patent claim scope and a determination of the rightful inventor of pending U.S. patents.  *See* 28 U.S.C. §§ 1331, 1338(a); *see also* 35 U.S.C. §§ 100, 116, 152 & 261.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because NCJC and Goche seek a declaration of their rights under the patent laws of the United States.

12.     This is also an action for a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

13.     This Court has personal jurisdiction because Rick Lawrence is a resident of this District and many of the acts of Defendants described herein occurred in this District.

14.     This Court has jurisdiction over NCJC's and Goche's related claims under the doctrine of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

15.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1391(c) because at least one defendant resides in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

16.     Goche has been farming for more than 35 years.  For the past 13 years, Goche has been engaged in precision farming, which involves using technology and data

to improve farming yields and efficiencies.  NCJC, Inc. is an end-to-end farm service and consulting company that provides consulting services related to precision farming.

17.     Precision farming uses Global Positioning Systems (GPS) and Geographic Information Systems (GIS) to determine where to plant, what to plant, when to apply nutrients and chemicals such as pesticides, and how much to apply.

18.     Using technology, it is possible to reduce input costs and increase gross revenue by eliminating the costly over application of chemicals and fertilizer.

19.     NCJC provides services to help other farmers use data and technology to improve their farming as well.

20.     There are a variety of factors that impact how well nutrients are absorbed by any crop.  Weather and the timing in the growth cycle of a crop are important factors. Applying nutrients just before it rains, for example, will be more or less efficient because the rain will wash nutrients away or drive them closer to the root system for plant uptake. The amount and type of nutrients and other chemicals is also a factor in product placement and timing of application.

21.     A common way to apply nutrients is by driving a tractor that is equipped with a long boom that extends in each direction away from the tractor to dispense nutrients or chemicals over a field of crops.

22.     Being more precise with when and how much to apply nutrients and chemicals can improve crop yields and reduce the extent that nutrients and chemicals are wasted.  Nutrients that are not absorbed will not help crops grow, but will run off into streams, rivers, ponds, lakes and groundwater supplies.

23.     Goche understood that being more precise with where nutrients and other chemicals are applied could also improve crop performance, reduce waste, and limit runoff of nutrients and chemicals.

24.     Goche and NCJC wanted to develop a system for dispensing nutrients and chemicals as close to the roots of crops as possible in order to yield the greatest benefits.

25.     NCJC hired Lawrence to invent an improved system for delivering nutrients to the roots of crops.

26.     Goche explained that NCJC wanted Lawrence to help develop a system that would deliver nutrients to crops in a more targeted manner by applying nutrients as close to the roots of the crop as possible.

27.     By targeting only the areas that needed nutrients or chemicals, NCJC sought to reduce the amount of product that needed to be applied to the crops, to minimize waste and to decrease the time required to apply nutrients or chemicals.

28.     Goche met with Lawrence and explained that NCJC was looking for a system that could disperse nutrients or chemicals from a boom directly next to the crops where they would be absorbed most efficiently.  Goche also explained that NCJC wanted the dispensing system to be light-weight since a heavy system would limit the length of the boom that could be used.  Goche explained that boom needed to move or retract to avoid obstacles, so that the boom wouldn't need to be removed to avoid natural or man-made obstacles such as trees, signs, fences, etc.  Goche explained that the system should not damage crops and should be easy to add to or remove from the boom.

29.     NCJC paid Lawrence to develop a prototype of the product he described.

30.    The initial prototype that Lawrence worked on was not successful.

31.    Goche and Lawrence discussed changes they could make to the design to improve performance in the next generation product.

32.    After experimenting with prototypes and changes to the designs, the parties jointly invented a better system for applying nutrients to the roots of crops.

33.    NCJC continued to pay Lawrence for the work he did to help invent a working product.

34.    In addition to paying Lawrence, NCJC provided sprayers, farm equipment, fields, and labor to develop the product.

35.    Because NCJC hired Lawrence to invent, paid him, and provided materials, equipment and labor, NCJC owns the inventions that Lawrence made and Lawrence has an obligation to assign them to NCJC.

36.    On November 3, 2014, Goche and Lawrence filed U.S. Provisional Application No. 62/074,217, which identifies both Goche and Lawrence as joint inventors.  Subsequently, they filed U.S. Patent Application No. 14/931,842 (the "'842 Application"), a utility application that is currently pending before the patent office that names Goche and Lawrence as joint inventors.

37.    Goche and NCJC paid all of the costs associated with filing the patent application.

38.    Figure 1 of the '842 Application shows an exemplary embodiment of the invention, which includes hose assemblies (80) that interconnect a boom (18) and an

applicator (90), wherein the applicator drags along the ground dispensing product while the boom is moved by a carrier such as a tractor.



FIG.1

39.     Claim 1 of the pending application is illustrative and claims:

A system for dispensing product along a ground surface of a field of crops using a mobile supporting boom spanning portions of the field of crops, comprising:

 a hose assembly extending from a proximal end to a distal end;

 a swivel connection rotatably connecting the proximal end to the supporting boom, wherein the swivel connection is movable from a retracted to an extended position; and

 an applicator connected to the distal end, whereby the applicator drags along the ground surface.

40.     Although NCJC hired Lawrence to invent, paid him, and provided the equipment, fields and funds needed to develop a product, Goche and Lawrence agreed

that they would jointly benefit from any and all subsequent efforts to commercialize the invention.

41.     To that end, Goche and Lawrence agreed that Lawrence would be responsible for building and operating a business to exploit the joint invention.  Goche, through his company NCJC, would provide the intellectual property.  Once the new business had earned at least $50,000, it would begin paying a royalty for use of the intellectual property.

42.     Goche and Lawrence thus formed a joint venture to commercialize the invention.

43.     Lawrence has acknowledged that Goche, who owns NCJC, has a right to share in the profits from the invention.  He has suggested various royalty structures, and he has sought Goche's involvement in contracting with Case/New Holland to distribute the product.

44.     Lawrence and Goche discussed their idea with Main, who has experience distributing farm supplies and machinery.

45.     Main has also acknowledged that Goche is a joint inventor of the product and that Goche should be paid royalties for the invention.

46.     On information and belief, Main and Main Transport are aware that Goche and Lawrence have an agreement to share the profits from the joint invention

47.     Despite the agreement between Goche and Lawrence, Main and Main Transport induced Lawrence to partner with them to manufacture and sell a product

under the name NutraBoss that practices the joint invention without sharing the profits with Goche or NCJC.

48.    Main Transport does business under the name NutraBoss.

49.    On information and belief, Defendants created a website, nutra-boss.com to sell the joint invention.

50.    The website includes descriptions and photos of the invention.  For example, the nutra-boss.com website includes the following "Intro":

# INTRO

  

### What Is NutraBoss?

NutraBoss is a dual fertilizer placement apparatus or tool, compatible with any sprayer presently on the market. It is used to evenly distribute nutrients near the root zone of any row crop plant based upon the concept of the *4R's of Nutrient Stewardship*.

### What Are The Main Features of NutraBoss?

- Single point hookup on existing boom;
- Small mounting bracket;
- Double jointed placement tool;
- Stainless steel construction;
- Lightweight (Unit weighs 9 lbs);
- Split application;
- Dual tube distribution.

### What Are The Chief Benefits of NutraBoss?

- Minimal cost with fast conversions;
- Stays on boom when units are removed;
- Moves easily through crop canopy;
- No erosion;
- Less weight & fatigue on boom;
- Nutrients get closer to root zone.

51.    The photographs on the nutra-boss.com website show the invention that Lawrence was hired to make.

52.    On information and belief, Main Transport has partnered with Case/New Holland to distribute the NutraBoss product.

53.     Lawrence, Main and Main Transport have never received permission to use the invention owned by NCJC without paying a royalty.

54.     In addition to breaching his agreement to pay a royalty, Lawrence filed his own patent application, U.S. Application No. 15/348,672 (the "'672 Application").

55.     The '672 Application is a continuation application, which claims the benefit of the priority date of the earlier filed '842 Application.

56.     According to § 201.07 of the Model of Patent Examining Procedure, "[a] continuation application is an application for the invention(s) disclosed in a prior- filed copending nonprovisional application, international application designating the United States, or international design application designating the United States. The disclosure presented in the continuation must not include any subject matter which would constitute new matter if submitted as an amendment to the parent application."

57.     When Goche discovered that the '672 Application had been filed, he contacted Lawrence through counsel for the parties and requested a copy of the application.

58.     Lawrence refused to provide a copy of the '672 Application even though, as a named inventor, joint venturer, and CEO of the company that owns the parent '842 Application, Goche was entitled to see the application that Lawrence had filed.

59.     Lawrence refused to provide a copy of the '672 Application even though,

60.     On information and belief, Lawrence refused to provide a copy of the '672 Application because he knew that he was not entitled to file the application and that he had improperly excluded Goche as an inventor.

61.     Although the '842 Application names Goche as a co-inventor, the '672 Application identifies Lawrence alone as the sole inventor.

62.     By excluding Goche from the '672 Application, Lawrence and his attorney Greg Koeller, who is prosecuting the application on Lawrence's behalf, represented to the United States Patent and Trademark Office that Lawrence is the sole inventor of all of the claims listed in the '672 application.

63.     Lawrence does not own, and therefore has no right to claim priority to, the '842 Application.  Although Lawrence is a joint inventor, NCJC is the sole owner of the '842 Application because it hired and paid Lawrence for his contributions to the invention.

64.     Lawrence is not entitled to patents on the '672 Application or any related application. On information and belief, the invention contained in Lawrence's pending patent application was conceived while Lawrence was hired to invent for NCJC.

65.     After the '672 Application published, Goche confirmed that the claims of the '672 Application include features that were jointly invented by Goche.  Accordingly, Goche should be named as a joint inventor of the '672 Application.

66.     By intentionally misrepresenting the inventorship on the '672 Application, Lawrence and his attorney engaged in deceptive conduct that could render any patent that issues from the '672 Application unenforceable.

67.     NCJC has no adequate remedy at law to redress the damage that has been, and is being done by Lawrence's attempt to obtain one or more patents on technologies that rightfully belong to NCJC.

68.     NCJC faces an immediate threat of irreparable harm.  As a result, the Court should declare NCJC's rights in the patent applications conceived in the scope of Lawrence's engagement to invent for NCJC.

69.      NCJC has a reasonable likelihood of success on the merits of one or more of his claims against Lawrence.

70.      The hardship to NCJC if the '672 Application is not reassigned and Lawrence is allowed to continue prosecuting patent applications based on an invention NCJC paid him to make far exceeds the Lawrence would suffer if equitable relief were granted.

71.     The public interest would be served by granting NCJC the injunctive relief he seeks.

## COUNT ONE

### (Declaratory Judgment)

72.     Plaintiffs repeat and reallege each and every allegation set forth above as though fully set forth herein.

73.     NCJC hired Lawrence to invent an improved system for dispensing nutrients or chemicals to a field of crops.

74.     NCJC supplied materials, equipment, his fields and additional labor to assist with making the invention.

75.     Goche described in detail what he wanted Lawrence to invent.

76.     Goche and Lawrence jointly invented an improved system for dispensing nutrients or chemicals to a field of crops.

77.     NCJC paid Lawrence in full for his services.

78.     Because Lawrence was hired to invent by NCJC, any invention that Lawrence made within the scope of what he was hired to do belongs to NCJC.

79.     The '842 Application claims an invention that Lawrence and Goche made within the scope of Lawrence's engagement to invent an improved system for dispersing nutrients or chemicals to a field of crops.

80.     Lawrence, Main and Main Transport are selling products believed to be covered by claims of the '842 Application.

81.     The '672 Application claims an invention that was made within the scope of Lawrence's engagement to invent an improved system for dispending nutrients or chemicals to a field of crops.

82.     An actual and justiciable controversy exists between NCJC and Lawrence regarding the ownership of the invention described in the '842 Application.

83.     An actual and justiciable controversy exists between NCJC and Lawrence regarding the ownership of the invention described in the '672 Application.

84.     A judicial declaration is necessary for NCJC to ascertain his rights with respect to the two pending applications.

85.     NCJC is entitled to an order determining that he is the owner of the inventions claimed in both the '842 Application and the '672 Application.

86.     Pursuant to pursuant to the Patent Laws of the United States, 35 U.S.C. § 100 et seq. and 28 U.S.C. §§ 2201 and 2202, NCJC is entitled to an order compelling the assignment of the '672 Application to NCJC.

## COUNT TWO

### (Breach of Contract – Against Lawrence)

87.     Plaintiffs repeat and reallege each and every allegation set forth above as though fully set forth herein.

88.     Goche and Lawrence entered into an oral agreement to jointly profit from the invention.

89.     Goche agreed that Lawrence could form a business to exploit the invention that NCJC had hired Lawrence to make.

90.     Lawrence agreed that he would pay a royalty after the business earned its first $50,000.

91.     Lawrence breached his obligations by forming a business to exploit the invention but refusing to make any royalty payment.

92.     Lawrence breached his obligations by filing a patent application that excluded Goche and NCJC and attempting to seize control of the invention for himself.

93.     As a result of Lawrence's above-described breaches of the agreement, plaintiffs are entitled to damages far in excess of $75,000.

## COUNT THREE

### (Breach of Fiduciary Duty – Against Lawrence)

94.     Plaintiffs repeat and reallege each and every allegation set forth above as though fully set forth herein.

95.     Lawrence and Goche formed a joint venture to exploit their invention.

96.     As a joint venturer, Lawrence owes fiduciary duties to Goche.

97.     Lawrence breached his fiduciary duties to Goche by keeping all the benefit of the joint venture for himself and excluding Goche.

98.     Lawrence breached his fiduciary duties to Goche by secretly filing a patent application covering the same invention without disclosing that to Goche.

99.     Lawrence breached his fiduciary duties to Goche by refusing to provide a copy of the patent application he filed to Goche.

100.    As a result of Lawrence's above-described breaches of fiduciary duty, Plaintiffs are entitled to damages far in excess of $75,000.

## COUNT FOUR

### (Unjust enrichment – Against Lawrence)

101.    Plaintiffs repeat and reallege each and every allegation set forth above as though fully set forth herein.

102.    Lawrence has earned revenue and continues to derive pecuniary gain through his unauthorized use of substantial portions of NCJC's work without its permission.

103.    Lawrence has been, and continues to be unjustly enriched by NCJC's and Goche's efforts, while Plaintiffs have been unjustly harmed by Lawrence's actions.

104.    Plaintiffs have sustained injury, loss and damages in excess of $75,000 as a result of Lawrence's actions and are entitled to relief.

## COUNT FIVE

### (Tortious Interference with Contract – Against Main and Main Transport)

105.     Plaintiffs repeat and reallege each and every allegation set forth above as though fully set forth herein.

106.     Goche entered into a contract with Lawrence to commercialize their invention.  Lawrence agreed to pay a royalty for use of the invention.

107.     Main and Main Transport were aware of the agreement.

108.     By their above-described actions and omissions, Main and Main Transport intentionally interfered with the contract by inducing Lawrence to sell the invention through Main Transport and to avoid paying a royalty.

109.     Main and Main Transport were not justified in interfering with the contract.

110.     Main and Main Transport tortiously interfered with the contract.

111.     As a result of the tortious interference of Main and Main Transport, NCJC has suffered damages in excess of $75,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment against Defendants as follows:

1.     A judgment against Lawrence, Main and Main Transport for Plaintiffs' direct, incidental and consequential damages in an amount to be determined at trial in excess of $75,000;

2.     An order compelling Lawrence to assign the '672 Application to NCJC;

3.      An award of costs, disbursements, prejudgment interest and attorneys' fees

incurred herein;

4.      An award of such other and further relief as the Court deems just and

equitable.

**ANTHONY OSTLUND**
**BAER & LOUWAGIE P.A.**


Dated:  June 29, 2017                    By:_____*s/ Daniel R. Hall*_____
                                                 Norman J. Baer (#0163715)
                                                 Daniel R. Hall (#392757)
                                         90 South Seventh Street, Suite 3600
                                         Minneapolis, MN  55402
                                         Telephone:  (612) 349-6969
                                         nbaer@anthonyostlund.com
                                         dhall@anthonyostlund.com

**ATTORNEYS FOR JOE GOCHE**