# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

NCJC, Inc. and Joseph Goche,                  File No. 17-cv-2385 (SRN/SER)

              **Plaintiffs,**

                                          **ORDER**

v.

**Rick Lawrence, Randy Main, and Main Transport, LLC d/b/a NutraBoss,**

              **Defendants.**

---

Daniel R. Hall and Norman J. Baer, Anthony Ostlund Baer & Louwagie PA, 90 S. 7th St., Suite 3600, Minneapolis, MN 55402, for Plaintiffs.

Randall T. Skaar and Scott G. Ulbrich, Skaar Ulbrich Macari, 601 Carlson Pkwy, Suite 1050, Minnetonka, MN 55305, for Defendants.

---

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Joint Status Report [Doc. No. 17] filed on April 26, 2018 by Plaintiffs NCJC, Inc. ("NCJC") and Joseph Goche (collectively, "Plaintiffs") and Defendants Rick Lawrence, Randy Main, and Main Transport, LLC (collectively, "Defendants"). On October 23, 2017 at the hearing on Defendants' Motion to Dismiss [Doc. No. 8], this Court ordered that this case be stayed pending action by the United States Patent and Trademark Office ("USPTO") on U.S. Application No. 15/348,672 (the "'672 Application") filed by Lawrence. (*See* Min. Entry for Oct. 23, 2017 Proceedings [Doc. No. 15].) In their Joint Status Report, the parties advise the Court that on February 20, 2018, the '672 Application issued as U.S. Patent No. 9,894,892 (the

"'892 Patent"). (Joint Status Report at 1.) For the reasons set forth below, the Court now lifts the stay, permits Plaintiffs to file a supplemental complaint, and denies, without prejudice, Defendants' Motion to Dismiss. *See* Section III.

## I.     BACKGROUND

### A.  Factual Background

On June 29, 2017, Plaintiffs filed a Complaint initiating this action. (*See* Compl. [Doc. No. 1].) Briefly stated, the Complaint alleges that Goche, through NCJC—his "end-to-end farm service and consulting company"—hired Lawrence to invent a system for delivering nutrients to crops "in a more targeted manner." (*Id.* ¶¶ 16, 26.) The Complaint alleges that Goche met with Lawrence, explained what he envisioned for the invention, and detailed some of the invention's specifications. (*Id.* ¶ 25–28.) NCJC then allegedly paid Lawrence to develop a prototype, (*id.* ¶ 29), and "provided sprayers, farm equipment, fields, and labor to develop the product," (*id.* ¶ 34). After the first prototype was unsuccessful, the Complaint alleges, Goche and Lawrence "jointly" and through an iterative process "invented a better system for applying nutrients to the roots of crops." (*Id.* ¶ 32.) Furthermore, according to the Complaint, although NCJC hired Lawrence to invent the system, paid him, and provided the necessary support and materials for the invention, "Goche and Lawrence agreed that they would jointly benefit from any and all subsequent efforts to commercialize the invention." (*Id.* ¶ 40.) To that end, the Complaint alleges, Goche and Lawrence agreed that Lawrence would "build[] and operat[e] a business to exploit the joint invention." (*Id.* ¶ 41.)

From this point, the parties' relationship went awry. The Complaint states that although Goche and Lawrence filed U.S. Provisional Application No. 62/074,217 identifying both of them as joint inventors, (*id.* ¶ 36), and thereafter filed U.S. Patent Application No. 14/931,842 (the "'842 Application") (a utility application) again listing both individuals as joint inventors, (*id.*), Lawrence subsequently and unbeknownst to Goche filed *his own* patent application—the '672 Application, (*id.* ¶ 54). The Complaint states that the '672 Application "is a continuing application, which claims the benefit of the priority date of the earlier filed '842 Application." (*Id.* ¶ 55.) However, the Complaint alleges, "[a]lthough the '842 Application names Goche as a co-inventor, the '672 Application identifies Lawrence alone as the sole inventor." (*Id.* ¶ 61.) Among many other allegations, the Complaint also states that although "Lawrence is a joint inventor, NCJC is the sole owner of the '842 Application because it hired and paid Lawrence for his contributions to the invention," and that therefore "Lawrence does not own, and . . . has no right to claim priority to, the '842 Application." (*Id.* ¶ 63.) In addition to the dispute regarding the '842 Application, the Complaint also alleges that in violation of Goche and Lawrence's agreed-upon "joint venture to commercialize the invention," Lawrence partnered with Defendants Main and Main Transport to "manufacture and sell a product . . . that practices the joint invention without sharing the profits with Goche or NCJC." (*Id.* ¶ 47.)

The Complaint alleges five Counts. Count I is a claim for declaratory judgment. (*See id.* ¶¶ 72–86.) This Count avers that a "judicial declaration is necessary for NCJC to ascertain his rights with respect to the two pending applications;" that "NCJC is entitled to an order determining that he is the owner of the inventions claimed in both the '842

Application and the '672 Application;" and that pursuant to "35 U.S.C. § 100 *et seq.* and 28 U.S.C. §§ 2201 and 2202, NCJC is entitled to an order compelling the assignment of the '672 Application to NCJC." (*Id.* ¶¶ 84–86.) Counts II–V, in turn, allege breach of contract, breach of fiduciary duty, unjust enrichment, and tortious interference with contract, respectively. (*Id.* ¶¶ 87–111.)

As a basis for federal jurisdiction, the Complaint states that "[t]his action arises under the patent laws of the [U.S.]" and/or "necessarily depends on the resolution of a substantial question of federal patent law, in that the claims and relief sought involve a determination of patent claim scope and a determination of the rightful inventor of pending U.S. patents." (*Id.* ¶ 11 (citing 28 U.S.C. §§ 1331, 1338(a) and 35 U.S.C. §§ 100, 116, 152, and 261).)

### B.  Procedural Posture

On September 11, 2017, Defendants filed their Motion to Dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.  (*See* Defs.' Mem. [Doc. No. 10].) With regard to jurisdiction, Defendants argued, in essence, that this Court lacked federal question jurisdiction because no patents on the various applications had yet issued. (*See id.* at 2–3.) Specifically, Defendants averred that although NCJC requested that this Court "ascertain[] NCJC['s] rights under the pending patent applications," "declar[e] NCJC the owner of the inventions," and "compel[] the assignment of the '672 application to NCJC," there is "no basis in federal law for correcting inventorship or ownership regarding a patent application, or, for that matter, compelling its assignment." (*Id.* at 2.) Plaintiffs disagreed, generally arguing that "[t]his case involves a cause of action founded on federal common law," and that "[c]ourt[s] recognize that the

4

obligation to assign ownership of an invention arises as a matter of federal common law." (Pls.' Mem. Opp'n Mot. Dismiss [Doc. No. 13] at 10.)

At the hearing on the motion, this Court expressed doubts about whether it had subject matter jurisdiction because no patent on the applications in dispute had yet been issued. Plaintiffs' counsel notified the Court, however, that it was likely that a patent would issue on the '672 Application in the coming weeks.  Plaintiffs' counsel indicated that a "Notice of Allowance" had been issued by the USPTO, which generally gives the applicant three months to pay the patent issue fee and indicates that a patent will be issued in the near future. *See* 35 U.S.C. § 151. However, failure to pay the fee results in the application "be[ing] regarded as abandoned."  *Id.* § 151(b).  In light of the impact that Lawrence's decision to pay the patent issue fee or abandon the application would have on the case, this Court suggested to the parties that the action be stayed to allow Lawrence to make this decision.  The parties agreed. This Court thus stayed the action and directed counsel to keep the Court apprised of relevant developments.

On December 30, 2017, the parties filed a joint status report alerting this Court that as of that date, Lawrence "ha[d] not decided whether to pay the issue fee for the '672 Application," but that if he ultimately did, a patent would be expected to issue in approximately two months. (*See* Joint Status Report of Dec. 30, 2017 [Doc. No. 16].) Then, on April 26, 2018, the parties filed the present Joint Status Report, alerting the Court that on February 20, 2018, the '672 Application issued as the '892 Patent. (Joint Status Report at 1.) With respect to the impact that the issuance of the patent had on the case, the parties took divergent positions. Plaintiffs argue that "[n]ow that the '892 [P]atent has issued, the Court

should lift the stay" and allow Plaintiffs "to file an Amended Complaint asking to compel the assignment of the now-issued '892 patent" and "to add a claim to correct the inventorship of the '892 patent to include Goche as a named inventor pursuant to 35 U.S.C. § 116 and 256." (*Id.*) Plaintiffs further contend that regardless of how this Court might have decided Defendants' Motion to Dismiss before the stay, it now "has jurisdiction to determine the proper owner of the now-issued patent and to address Plaintiffs' claim to correct the inventorship." (*Id.*) Defendants disagree. They argue that because this Court lacked subject matter jurisdiction over the initial Complaint, the only action it may take is to dismiss the case. (*Id.* at 2.) Specifically, Defendants contend that because they took timely action to dismiss the case, "the time-of-filing rule applies" and will always bar subject matter jurisdiction in this action. (*Id.*)

## II.   DISCUSSION

At the root of the parties' disagreement is whether events that occurred *after* the Complaint was filed, namely, the issuance of a patent, can "cure" a purported jurisdictional defect in the original Complaint.  Defendants refer to the so-called "time-of-filing" rule and, without citing any authority, argue that "Plaintiffs cannot use subsequent events to attempt to establish jurisdiction that was lacking at the time of filing." (*Id.*) In *Grupo Dataflux v. Atlas Global Group, L.P.*, the Supreme Court described the time-of-filing rule as "hornbook law" dictating that courts must "measure[] all challenges to subject-matter jurisdiction *premised upon diversity of citizenship* against the state of facts that existed at the time of filing—whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal." 541 U.S. 567, 570–71 (2004) (emphasis added). Stated plainly, the

Supreme Court reaffirmed that "[i]t has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought,'" *id.* at 570 (quoting *Mollan v. Torrance*, 9 Wheat. 537, 539, 6 L.Ed. 154 (1824)), and that in diversity cases, parties may not cure a jurisdictional defect that existed at the time of the suit's commencement by a "change in the citizenship of a continuing party," *id.* at 575; *see also Chavez-Lavagnino v. Motivation Educ. Training, Inc.*, 714 F.3d 1055, 1056 (8th Cir. 2013).[1] Nevertheless, as several courts of appeals have explained, "the *Grupo Dataflux* Court explicitly restricted the time-of-filing rule to *diversity cases*. Nothing in the opinion intimates that the Court meant to extend the rule wholesale beyond the frontiers of the diversity context." *ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 93 (1st Cir. 2008) (emphasis added). Indeed, because "[t]he letter and spirit of the rule apply most obviously" in that context, "where heightened concerns about forum-shopping and strategic behavior offer special justifications for it," courts have been careful not to import the rule "indiscriminately into the federal question realm." *Id.* at 92; s*ee also New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1503 (3d Cir. 1996) ("The rule that jurisdiction is assessed at the time of the filing of the complaint has been applied only rarely to federal question cases. Moreover, in these rare cases, the rule has often been applied axiomatically, without extensive discussion or analysis.").

In fact, where diversity jurisdiction is not implicated, the Supreme Court has confirmed that "supplemental pleadings can be used to cure subject matter jurisdiction

---

[1] "A jurisdictional defect at the time of commencement can be cured by *dismissal* of the non-diverse party," however. *Chavez-Lavagnino*, 714 F.3d at 1056 (citing *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 64 (1996)).

deficiencies." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1337 (Fed. Cir. 2008). In contrast to amended pleadings, which relate to matters that occurred *before* the filing of the original pleading, supplemental pleadings under Federal Rule of Civil Procedure 15(d) "are intended to cover matters occurring after the original complaint is filed." *U.S. ex rel. Kinney v. Stoltz*, 327 F.3d 671, 673 n.4 (8th Cir. 2003) (citing *United States v. Vorachek*, 563 F.2d 884, 886 (8th Cir. 1977)). "The purpose of a supplemental pleading is to set forth new facts that have occurred since the filing of the original pleading and that affect the controversy and the relief sought." *Weisbord v. Mich. State Univ.*, 495 F. Supp. 1347, 1351 (W.D. Mich. 1980). Accordingly, courts have held that "when a court lacks authority to act at the time the original complaint is filed, the plaintiff may cure such a defect by filing a supplemental pleading alleging a fact, necessary to create jurisdiction, that was not in existence at the time the original complaint was filed." *Hill v. Kwan*, 962 A.2d 963, 968 (Me. 2009) (construing Maine's rules of procedure but relying solely on federal law).

For example, in *Mathews v. Diaz*, the Supreme Court considered whether the district court had jurisdiction over the claims of a plaintiff who, at the time the suit was commenced, had failed to meet a "nonwaivable condition of jurisdiction." 426 U.S. 67, 75 (1976). Under 42 U.S.C. § 405(g), the plaintiff had to file an application for benefits with the Secretary of Health, Education and Welfare before the district court could exercise jurisdiction over his legal challenge to the overall benefits program's eligibility requirements—an application he did not file until after the defendant moved to dismiss for lack of subject matter jurisdiction. *Id.* Considering the issue of subject matter jurisdiction, the Supreme Court held that "[it] ha[d] little difficulty with [the plaintiff]'s failure to file an

application with the Secretary" before the action was commenced. *Id.* Because the plaintiff had satisfied this jurisdictional condition while the case was pending before the district court, a "supplemental complaint . . . would have eliminated the jurisdictional issue." *Id.*

Similarly, in *Wilson v. Westinghouse Electric Corporation*, the Eighth Circuit held that "[e]ven when the [d]istrict [c]ourt lacks jurisdiction over a claim at the time of its original filing, a supplemental complaint may cure the defect by alleging the subsequent fact which eliminates the jurisdictional bar." 838 F.2d 286, 290 (8th Cir. 1988) (citing *Mathews*, 426 U.S. at 75). In *Wilson*, the plaintiff filed a charge with the Equal Employment Opportunity Commission alleging unlawful refusal-to-hire, but did not wait for 60 days before filing his complaint in federal court as is required by the Age Discrimination in Employment Act ("ADEA"). 838 F.2d at 289. The plaintiff, however, filed a supplemental complaint after the required 60 days had elapsed, restating his failure-to-rehire claim, and argued that his supplemental pleading had cured the jurisdictional defect. *Id.* Nevertheless, the district court dismissed the plaintiff's claim on the ground that the court lacked subject matter jurisdiction under the ADEA based on the plaintiff's noncompliance with the 60-day waiting period when he filed his original complaint. *Id.* The Eighth Circuit reversed. It reasoned that

> while the [d]istrict [c]ourt was clearly unable to exercise jurisdiction over [the plaintiff]'s rehire claim upon the filing of his original complaint, the expiration of the 60-day waiting period was exactly the kind of event occurring after filing that [the plaintiff] should have been allowed to set forth in a supplementary pleading under Fed. R. Civ. P. 15(d).

*Id.* at 290; *see also Hertz Corp. v. Enter. Rent-A-Car*, 557 F. Supp. 2d 185, 192 (D. Mass. 2008) (holding that allegation in "First Amended and Supplemental Complaint" that a

patent had been issued since the original complaint was filed "should be viewed as a supplemental pleading accomplishing its intended purposes of healing a jurisdictional defect").

In this case, the Court is persuaded that the same principles apply to permit Plaintiffs to file a supplemental complaint and attempt to cure any jurisdictional defects purportedly contained in their first Complaint. Parties may not supplement a complaint as a matter of right. *Kinney*, 327 F.3d at 673 n.4. However, this Court has discretion, "[o]n motion and reasonable notice," to permit, "on just terms," "a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Although Plaintiffs did not, in the Joint Status Report, style their request to file an *amended* complaint as a motion under Rule 15(d), this Court nevertheless treats it as such. *Kennedy Bldg. Assocs. v. CBS Corp.*, 576 F.3d 872, 880 n.8 (8th Cir. 2009) ("While Kennedy did not style its motion under Rule 15, the district court may choose to treat it as such and entertain Kennedy's claims.").[2] Furthermore, this Court is persuaded that allowing Plaintiffs to file a supplemental complaint, versus, for instance, dismissing the case without prejudice only to have Plaintiffs initiate a new action, is the appropriate path forward. As the Eighth Circuit stated in *Wilson*, "suspension of proceedings pending the satisfaction of a jurisdictional prerequisite is preferable to dismissal with leave to refile, which would serve no purpose other than the creation of an additional

---

[2] The Court notes that Plaintiffs requested to file an "Amended Complaint." (*See* Joint Status Report at 1–2.) However, as explained, Plaintiffs' request is construed as a motion to file a *supplemental* complaint since they seek to assert matters that occurred after they filed their original Complaint.

procedural technicality." 838 F.2d at 290 (citations omitted). Indeed, "[p]ermitting a supplemental pleading here will 'promote the economic and speedy disposition of the controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any other party.'" *Judicial Watch, Inc. v. U.S. Dep't of Energy*, 191 F. Supp. 2d 138, 139 (D. D.C.  2002) (quoting *Bornholdt v. Brady*, 869 F.2d 57, 68 (2d Cir. 1989)). Doing otherwise would create "precisely the kind of procedural mousetrap that the Federal Rules were designed to dismantle." *Wilson*, 838 F.2d at 289.

Accordingly, this Court will lift the stay on this case and permit Plaintiffs to file a supplemental complaint. Moreover, because this Court will then look to the supplemental complaint to determine jurisdiction,[3] it now denies, without prejudice, Defendants' Motion to Dismiss. After Plaintiffs file their supplemental complaint, Defendants may, in accordance with the Local Rules, elect to file an answer or a new motion to dismiss addressing the supplemental complaint. If the parties so request it, and again in accordance with the Local Rules, this Court would permit further oral argument on any new motion to dismiss filed by Defendants.

## III.   ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

---

[3] *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007) (noting that "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction"); *see also Prasco*, 537 F.3d at 1337 (stating that "the proper focus in determining jurisdiction are 'the facts existing at the time the complaint *under consideration* was filed'" (quoting *GAF Bldg. Materials Corp. v. Elk Corp.*, 90 F.3d 479, 483 (Fed. Cir. 1996))).

1. The stay on this action is **LIFTED**;

2. Defendants' Motion to Dismiss [Doc. No. 8] is **DENIED WITHOUT PREJUDICE**; and

3. Within (7) days of this Order, Plaintiffs **SHALL FILE a SUPPLEMENTAL COMPLAINT**.

Dated: May 8, 2018

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge